IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY MAXWELL,

        Petitioner,

vs.                                            No. CIV 99-123 JC/LFG

ERASMO BRAVO,

        Respondent.

## MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDED DISPOSITION[1]

### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed February 4, 1999. Petitioner Anthony Maxwell ("Maxwell"), currently confined at the New Mexico State Penitentiary in Santa Fe, New Mexico, challenges the judgment and sentence entered by the Fifth Judicial District Court in State v. Maxwell, No. CR 96-158 (County of Chaves, New Mexico).

2. A jury found Maxwell guilty of trafficking and distribution of a controlled substance, and the conviction was affirmed on appeal. The state courts denied post-conviction relief. Maxwell then brought this habeas petition in federal court. Respondent answered and moved to dismiss the

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

petition, asserting that Maxwell failed to state a constitutional claim.

3. Maxwell presents the following grounds for federal habeas review:

Ground One: The trial court violated his constitutional rights by: (1) denying his motion for a mistrial when a State's witness testified that Maxwell had been a "target," after the court ruled that such statements were improper; (2) allowing the State to present evidence that Maxwell's prior conviction was for an offense similar to the current charges; (3) denying a mistrial based on an inflammatory and emotional argument of the prosecutor; and (4) allowing amendment of the information on the eve of trial without giving Maxwell a preliminary hearing on the new charge.

Ground Two: He was denied effective assistance of counsel in that his attorney: (1) failed to develop the facts surrounding Maxwell's whereabouts on certain dates; (2) failed to investigate the fact that Maxwell was never observed selling drugs, or receiving money, by anyone other than State's witnesses; (3) failed to interview witnesses, whom Maxwell had identified by names and addresses, regarding Maxwell's whereabouts on certain dates; (4) failed to explore and notify Maxwell of plea bargaining opportunities; (5) failed to conduct a sufficient voir dire of the jury; (6) failed to object to introduction of prejudicial testimony; and (7) failed to preserve issues for review.

4. Respondent concedes, and this Court finds, that Maxwell exhausted his available state remedies, and the petition is properly before the Court.

## Allegations of Error by the Trial Court

5. All four of the issues stated in Ground One, alleging various errors by the trial court, were thoroughly briefed by the parties and addressed by the New Mexico Court of Appeals in its opinion affirming Maxwell's conviction. A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the state proceeding resulted in a decision that

was contrary to federal law or was based on an unreasonable determination of the facts in light of the evidence presented. Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999); 28 U.S.C. § 2254(d). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000).

6. Section 2254(d) was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), which "increases the deference to be paid by federal courts to the state court's factual findings and legal determinations." Houchin v. Zavaras, 107 F.3d 1465 1470 (10th Cir. 1997).

> The Supreme Court of the United States sets the bounds of what is "reasonable"; a state decision within those limits must be respected -- not because it is right, or because federal courts must abandon their independent decisionmaking, but because the grave remedy of upsetting a final judgment entered by another judicial system after full litigation is reserved for grave occasions. That is the principal change effected by § 2254(d).

Lindh v. Murphy, 96 F.3d 856, 871 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320, 117 S. Ct. 2059 (1997). "[W]e can grant habeas relief only if a state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." White v. Scott, 141 F.3d 1187 (Table, text in Westlaw), No. 97-6258, 1999 WL 165162, at *2 (10th Cir. Apr. 9, 1998).

7. This Court cannot say that the decision of the New Mexico Court of Appeals was contrary to established federal law, or was based on an unreasonable determination of the facts in light of the evidence. Maxwell's claim under Ground One thus does not justify federal habeas relief, on any of the four bases asserted.

Denial of Mistrial Upon Testimony That Maxwell Was a "Target"

8. The state court of appeals held that the testimony of an undercover drug agent describing Maxwell as a "target," after the prosecution agreed to "stay away from that" type of characterization, did not necessitate a mistrial.

9. At trial, Maxwell's counsel objected when the agent first used the word "target," arguing in a bench conference that the word was prejudicial in that it implied the authorities had reason to suspect Maxwell as a drug dealer. The prosecutor agreed to stay away from such characterizations; however, in later questioning, the agent again used the word "target." The trial judge refused Defendant's request to declare a mistrial at that point, noting that the prosecutor's question did not "run afoul" of the court's earlier admonition; rather, the witness spontaneously uttered the word, and the prosecutor immediately intervened and directed the questioning along other lines. (Record Proper, State v. Maxwell, Cr. No. 96-158 (Chaves County), Jury Trial Cassette Tape 5, at 19.25 to 22.15).[2]

10. The court of appeals agreed, reasoning that although the word "target" could possibly lead a juror to infer that Maxwell was known to be involved in drug activity, the word itself conveys "no more than bare suspicion"; the prosecution did not intentionally elicit use of the word and made no effort to capitalize on it; and Maxwell sought no limiting instruction at the time the word was uttered. The court held that "[w]e do not believe that the officer's use of the term 'target' deprived Defendant of a fair trial."

11. The decision of the court of appeals was not contrary to established federal law, nor

---

[2] Trial tapes will hereafter be referred to in the form: "Tape 5, at 19.25 to 22.15." The tapes were played on a Sony BM-75 Dictator/Transcriber, which has approximately 47.00 counters per tape.

4

based on an unreasonable factual determination. Although it might have been preferable if the word "target" had not been used by the State's witness, it was not solicited nor emphasized by the prosecution and, in the overall context of the trial, its use did not deprive Maxwell of due process.

### Evidentiary Ruling on Maxwell's Prior Conviction

12. Maxwell testified in his own behalf at trial. On direct examination, he revealed that the had been convicted of a felony four years earlier, but he gave no information as to the nature of the prior offense. The prosecution elicited the name of the offense – marijuana distribution – on cross examination. Defense counsel lost his battle to keep from the jury the name of the prior felony, arguing that marijuana distribution was similar to offense for which Maxwell was now on trial, and the jury might make the impermissible inference that Maxwell must have committed the present crime because he had done a similar thing in the past. The judge ruled that impeachment was proper which included the name of the prior offense. (Tape 7, at 30.22 to end; Tape 8, at 0.00 to 2.18 and 29.19 to 29.48).

13. The court of appeals held that there was no abuse of discretion in allowing the prosecution to elicit the name of the prior felony and held that the trial court appropriately weighed the relevant factors in deciding that the probative value of the evidence outweighed its prejudicial effect. Most important to the court of appeals was the fact that Maxwell was the only defense witness and that his testimony directly contradicted that of the undercover agent; his credibility was therefore a central issue in the case. The court accepted the State's argument that the jury was entitled to know "what sort of person is asking them to take his word," citing State v. Lucero, 98 N.M. 311, 313, 648 P.2d 350, 352 (Ct. App. 1982). The court concluded, "Although we may have found it preferable for the jury not to be advised of the specific name of the prior felony, we cannot

say that the district court abused its discretion."

14. A federal habeas court does not pass judgment on evidentiary rulings made in state criminal proceedings. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). "In a habeas proceeding claiming a denial of due process, we will not question the evidentiary or procedural rulings of the state court unless the petitioner can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair." Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995).

15. Allowing evidence of the exact nature of Maxwell's prior conviction did not render his trial, as a whole, fundamentally unfair. Although the prosecution does not have "unlicensed latitude" in cross examining an accused about a prior felony, when defendant testifies regarding a previous felony conviction on direct examination, he "subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility," including information on the nature of the previous felony and when it was committed. Martin v. United States, 404 F.2d 640, 642-43 (10th Cir. 1968).

16. In his closing remarks, the prosecutor noted that Maxwell's alibi was presented solely through his own testimony, and the jury would have to assess his credibility. In so doing, he said, they should take into account the fact that Maxwell was a convicted felon. (Tape 9, at 10.16 to 10.29). The prosecutor did not restate the name of the prior felony in closing argument, nor did he imply that the jury should consider the similar nature of the previous offense. The trial court instructed the jurors that they should consider the evidence of a prior conviction for the purpose of determining whether the defendant told the truth when he testified in this case, "and for that purpose only." (Tape 9, at 4.52 to 5.08)

17. Even if the trial court had committed error in admitting the name of the prior offense,

6

habeas relief is not warranted where such evidence constitutes a minor part of the trial, and where any prejudice from its admission is insignificant in comparison to other properly admitted evidence of the defendant's guilt. Hopkinson v. Shillinger, 866 F.2d 1185 (10th Cir. 1989), *overruling on other grounds recognized by* Davis v. Maynard, 911 F.2d 415, 417 (10th Cir. 1990). Given the totality of the evidence, and in the overall context of the trial, the Court cannot say that allowing the prosecution to name to prior offense on cross-examination violated Maxwell's due process rights or rendered his trial fundamentally unfair. This Court will defer to the state court ruling.

### Denial of Mistrial Based on Allegedly Inflammatory Argument of Prosecutor

18. The question whether to declare a mistrial based on prosecutorial misconduct is a matter left to the sound discretion of the trial court, which must examine whether the error had a prejudicial impact when viewed in the context of the entire case, and whether manifest necessity compelled declaration of a mistrial. United States v. Gabaldon, 91 F.3d 91, 94 (10th Cir. 1996).

19. Even when the prosecutor's rhetoric is intemperate, the trial court's task in ruling on a motion for mistrial is to assess whether the language had a prejudicial impact "consider[ing] the trial as a whole, including 'the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case.'" United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996). It is only if the misconduct was flagrant enough to influence the jury to convict on grounds other than the evidence presented, that the court would be justified in declaring a mistrial. Gabaldon, at 94.

20. In his closing remarks, Maxwell's attorney argued that the case involved mistaken identity – that the undercover officer mistook Maxwell for another African-American man living in the same apartment complex. In rebuttal, the prosecutor argued that the agent saw and interacted with Maxwell over a period of time, on social occasions and for the purpose of purchasing drugs from him,

7

that he identified Maxwell in court, and that there was no mistake. He concluded with a story, supposed to have occurred 100 years ago, in which a man sold townspeople an elixir which poisoned them. When a posse of twelve people went out looking for the man, they came upon an old miner who advised them not to follow the obvious tracks but to look in another direction. The posse, being wise and using common sense, rejected the miner's advice, followed the tracks, and caught the culprit. The prosecutor then turned to Maxwell and told the jury, "Well, take a look, a hundred years later, at the person who's trying to poison your community. He's sitting right over there. There he is. And I ask that you find him guilty of the crimes of trafficking and distribution." (Tape 9, at 29.38 to 29.58).

21. After the jury was excused, defense counsel asked for a mistrial based on these remarks. He argued that the prosecutor's story was told solely to inflame the passions of the jury and constituted an emotional appeal, intended to convict Maxwell based on reference to the problem of drugs in the community. The prosecution argued that a "plea for law enforcement" was an acceptable approach in closing argument. The trial judge agreed with the prosecution and held that the argument was not improper. (Tape 9, at 30.05 to 32.10).

22. The New Mexico Court of Appeals found no abuse of discretion in the judge's refusal to declare a mistrial based on the prosecutor's remarks, noting that the prosecutor was simply urging the jurors to "follow the trail of evidence leading to Defendant," and that he did not harangue the jury about the evils of the drug trade. (Exhibit C to Answer, at 6).

23. "Prosecutorial misconduct does not warrant federal habeas relief unless the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair." Smallwood, at 1275. This Court cannot say that the prosecutor's conduct was so flagrant

that it led the jury to convict on grounds other than the evidence presented. Gabaldon, at 94. Defendant raised the issue of mistaken identity, and the story of the posse being misdirected from the obvious, common-sense path was a comment on the defense's attempt, as the prosecution saw it, to draw a red herring across the trail of the true culprit. While it may have bordered on the overly dramatic, this was not improper argument. The trial court therefore did not err in denying defendant's request for a mistrial, and the state court of appeals' decision was not contrary to federal law. Smallwood, at 1264-65. Habeas relief is not warranted on this issue.

Allowing Amendment of Information Without a New Preliminary Hearing

24. On the opening day of trial, Maxwell's attorney argued that his client was entitled to a new arraignment and preliminary hearing, because the original criminal information under which Maxwell had been charged was amended the day before, to change the word "methamphetamine" to "amphetamine." In the alternative, defense counsel requested that the amendment not be allowed.

25. The State responded that the original characterization of the drug as methamphetamine amounted to a "scrivener's error" and that Maxwell was still charged with the same crime, under the same statute, with the same penalty. He also noted that the field test for these drugs does not distinguish between methamphetamine and amphetamine. The judge denied the defense request, ruling that since the amendment did not make substantive, prejudicial changes, remand for a new preliminary hearing was not required. He allowed the prosecution to go forward with the amended information. (Tape 1, at 0.30 to 4.20).

26. The state court of appeals upheld this ruling, based on state law allowing minor errors in a criminal complaint, or variance between the allegations of a complaint and the evidence offered in support thereof, as long as the error or variance does not prejudice substantial rights of the

9

defendant. The court noted that the amendment did not charge an additional or different offense; Maxwell was still accused of distribution of a controlled substance in violation of Section N.M.S.A. (1978) 30-31-22(A). In addition, Maxwell had not established, or even cited, any prejudice arising from the change. (Exhibit C to Answer, at 6-7).

27. The state court properly allowed the amendment to the information, and the court of appeals did not violate federal law in upholding this ruling. There is no constitutional violation when an state indictment is changed to correct a clerical error, when the petitioner does not allege that he would have conducted his defense differently but for the amendment, and when no prejudice is shown. Jervis v. Hall, 622 F.2d 19, 22-23 (1st Cir. 1980). *See also*, United States v. Janoe, 720 F.2d 1156, 1160-1161 (10th Cir. 1984) (direct appeal; indictment need not be resubmitted to grand jury when the name of the federal agency insuring the savings and loan which was robbed was changed to correct a misnomer, since the change did not affect a matter of substance and the defendant was not prejudiced); United States v. McNeal, 865 F.2d 1167, 1170 (10th Cir. 1989) (direct appeal; indictment held sufficient, although it contained technical error in use of word "deposits" rather than "accounts," where it specifically informed defendant of the nature of the alleged offense and the statutory offense charged).

28. The allegations of error by the trial court were adjudicated on the merits in the New Mexico Court of Appeals, and certiorari was denied by the New Mexico Supreme Court. The court of appeals' decision was not contrary to established federal law, nor was it unreasonable, and this Court will defer to the state court ruling. 28 U.S.C. § 2254(d).

### Allegations of Ineffective Assistance of Counsel

29. To establish ineffective assistance of counsel, Maxwell must make a two-prong showing:

(1) that counsel's performance was constitutionally defective; and (2) that the deficient performance prejudiced the defense, in that counsel's errors were so serious as to deprive the defendant of a fair trial with a reliable result. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *accord*, Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996). To prove deficient performance, Maxwell must overcome the presumption that counsel's conduct was constitutionally effective. Duvall v. Reynolds, 139 F.3d 768, 776 (10th Cir.), *cert. denied*, 525 U.S. 933, 119 S. Ct. 345 (1998). Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight. Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995). In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997). Trial counsel's performance in this case was not "completely unreasonable."

30. All seven of the separate alleged failings, which Maxwell asserts as support for his ineffective assistance claim, were raised in his state habeas corpus petition, and all were rejected by the state courts. (Exhibit E to Answer). The state judge, on habeas review, summarily denied issues 5, 6, and 7, which dealt with failure to conduct an adequate voir dire, failure to object to testimony that defendant was a "target," and failure to preserve issues for appeal.[3] However, the judge ordered that the State should have an opportunity to respond to the other issues raised in the petition. (Exhibit G to Answer). The State responded with a brief memorandum, attaching the affidavit of Thomas Dow, Maxwell's trial attorney. After considering this evidence, the trial judge denied the remainder of the habeas petition. (Exhibits F and H to Answer).

---

[3] The issues in the state petition were numbered identically to the issues involved in the present petition.

11

### Counsel's Alleged Trial Errors (Issues 5, 6, and 7)

31. On Issues 5, 6, and 7 of Ground Two, the state habeas court found that "Petitioner's defense counsel conducted sufficient and adequate voir dire of the jury, made and preserved the appropriate objections to the introduction of evidence and did not fail to preserve the appropriate issues for appellate review." (Ex. G to Answer, at 1-2). Maxwell gives no specifics as to how the voir dire was inadequate, or which issues were not preserved for appeal due to counsel's failings. Conclusory allegations unsupported by specifics do not justify habeas relief based on ineffective assistance of counsel. Hatch v. Oklahoma, 58. F.3d 1447, 1469 (10th Cir. 1995); Eskridge v. United States, 443 F.2d 440, 443 (10th Cir. 1971). In addition, the claim that defense counsel did not object to use of the word "target" is not supported by the record. (Tape 4, at 17.00 to 18.07; Tape 5, at 19.25 to 22.15). Habeas relief is not warranted on these issues.

### Failure to Develop Facts Underlying Alibi Defense (Issue 1)

32. In Issue 1, Maxwell faults his attorney for failing to investigate his whereabouts on the dates when the offenses were committed. In Issue 3, he argues that the attorney failed to interview alibi witnesses who could have confirmed his whereabouts on the pertinent dates, after Maxwell had given counsel their names and addresses.

33. As noted above, the state habeas judge allowed the State to submit additional evidence on these issues. In response, the State submitted the affidavit of Thomas Dow, Maxwell's trial attorney, who stated that: (1) Maxwell had an alibi for only one of the counts in the four-count indictment; (2) the only alibi witnesses proffered by Maxwell were his mother and a friend, Della Roberts; (3) Dow spoke with Della Roberts, who stated that she and Maxwell were in Midland, Texas on the day one of the crimes was committed, but she was unable to produce the rental car

records which she said would corroborate this statement; (4) for this and other reasons, Dow concluded that Ms. Roberts would not make a credible witness; (5) Maxwell gave Dow an address but no phone number for his mother, whom Maxwell said he had been visiting in Midland on the date in question; (6) Dow's and Maxwell's attempts to contact the mother by phone did not bear fruit, and Maxwell was unable to provide Dow with any other leads on how to locate his mother; and (7) Dow was unsuccessful in his attempts to obtain other witnesses or documentation as to the alibi. Upon receipt of this information, the state habeas court denied the petition, and certiorari was denied by the state supreme court. (Exhibits H and J to Answer).

34. The state court correctly rejected Issues 1 and 3 of the habeas petition. Counsel has a duty to make reasonable investigations, or to make a reasonable decision that renders particular investigations unnecessary. Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997), *cert. denied*, 525 U.S. 852, 119 S. Ct. 128 (1998). However, a defendant cannot charge ineffective assistance of counsel based on failure to investigate, when defendant himself withholds the essential information required to trigger an investigation. United States v. Rhodes, 913 F.2d 839, 844 (10th Cir. 1990).

35. The state court could reasonably have found that Dow did the best he could with the meager information provided by Maxwell. The evidence, unchallenged by Maxwell, is that Dow was given the names of two alibi witnesses, one of whom was unreachable, the other of whom was unreliable. The decision whether to call a witness generally rests within the sound discretion of trial counsel, Jackson v. Shanks, 143 F.3d 1313, 1319 (10th Cir.), *cert. denied*, 525 U.S. 950, 119 S. Ct. 378 (1998), and such decisions involving trial tactics and strategy are "virtually unchallengeable." Strickland, at 690. Maxwell does not point to any other lines of investigation that Dow could have followed. If Maxwell had more information tending to establish an alibi, he did not give it to Dow.

36. Under all the circumstances, the Court cannot say that Maxwell's trial counsel conducted a constitutionally inadequate investigation of Maxwell's alibi, nor that his decision to forgo the testimony of Ms. Roberts was improper trial strategy rising to the level of a constitutional violation.

<u>Failure to Investigate the Fact that Maxwell Was Not Observed Selling Drugs
By Anyone Other Than State's Witnesses (Issue 2)</u>

37. In Issue 2, Maxwell argues that his attorney was ineffective in failing to investigate the fact that Maxwell was never observed selling drugs or receiving money by anyone other than the State's witnesses, and in failing to investigate the fact that the State never proved possession of narcotics by Maxwell. The State responded to this argument in the state habeas proceedings, as follows:

> This issue makes no sense. Perhaps if there were more details from Petitioner, it would. At present, with what it appears to say, any such evidence is irrelevant, immaterial and inadmissible. The random testimony of individuals who would state that they never saw him sell drugs or receive money has nothing to do with the four times he sold them to an undercover officer. The State does not have to file nor prove a separate charge of Possession of Narcotics in order to convict for Trafficking.

(Exhibit F to Answer). The state court denied habeas relief on this ground.

38. Maxwell appears to be arguing that, if his attorney had produced witnesses who could testify that he never sold drugs to them, that would have created reasonable doubt. As the State pointed out, this argument does not make sense. The fact that Maxwell did not sell drugs to five, or ten, or a hundred other witnesses is not relevant to the question of whether he sold drugs to the undercover agents involved in this case. The fact that his attorney did not call to the stand persons to whom Maxwell had not sold drugs does not render the attorney's assistance ineffective.

14

Failure to Explore and Notify Maxwell of Plea Bargaining Opportunities (Issue 4)

39. Finally, in Issue 4, Maxwell alleges that his attorney was ineffective in that he did not explore the possibility of a plea bargain and failed to present any such opportunities to him. The two-part test under Strickland applies to claims of ineffective assistance of counsel arising from the plea process. Hill v. Lockhart, 474 U.S. 52, 57, 106 S. Ct. 366, 370 (1985). Thus, Maxwell must show that his attorney's performance in conducting or failing to conduct pretrial plea negotiations was inadequate and that, but for counsel's failings, the result would have been different.

40. When the allegation of ineffective assistance concerns the attorney's handling of plea matters, the petitioner must satisfy the second "prejudice" prong of the Strickland test by showing how he was harmed by going to trial rather than pleading guilty, United States v. Faubion, 19 F.3d 226, 229 (5th Cir. 1994); and he must also show that, but for counsel's actions, he would have pled guilty. Engelen v. United States, 68 F.3d 238 (8th Cir. 1995).

41. Maxwell has requested an evidentiary hearing and, on the face of the record, there appears to be a dispute as to facts. Maxwell contends in his habeas petition that his attorney failed to adequately explore plea bargaining opportunities and to bring such opportunities to this attention. The State countered Maxwell's state habeas petition with the affidavit of his trial counsel, Thomas Dow (Exhibit F to Respondent's Answer). Dow states in this affidavit that Maxwell told him he did not want to enter into any plea negotiations with the State, other than to request that Dow ask the State to dismiss all charges against him.

42. Maxwell's showing that his attorney failed to explore or communicate plea bargaining opportunities consists solely of a general allegation to that effect. In light of the Supreme Court's holding that "[a] convicted defendant making a claim of ineffective assistance must identify the acts

15

or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," Strickland, 466 U.S. at 690, Maxwell's allegation regarding lack of plea bargaining is not sufficient to justify relief nor, indeed, to require an evidentiary hearing.

43. Petitioner must allege specific actions by his attorney which prejudiced him in the plea process. Hopkinson, at 1211. "In order to warrant relief, or, as an initial matter, even an evidentiary hearing, a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim." Hatch, at 1469. The Court is not required to conduct an evidentiary hearing on the basis of vague, conclusory allegations unsupported by specific facts. Eskridge v. United States, 443 F.2d 440, 443 (10th Cir. 1971) ("the conslusory averment imposed no obligation for a hearing"). *See also*, Case v. Crouse, 376 F.2d 586, 588 (10th Cir. 1967) ("the prisoner must allege some factual basis for the relief sought [in order to be entitled to an evidentiary hearing]"); Anderson v. United States, 367 F.2d 553, 554 (10th Cir. 1966); United States v. Hutchinson, 991 F.2d 806 (Table, text in Westlaw), No. 92-1268, 1993 WL 128880, at *3 (10th Cir. Apr. 21, 1993):

> To decide whether Mr. Hutchinson is entitled to an evidentiary hearing, we must first determine whether his allegations, if proved, would entitle him to relief . . . These allegations must be more than mere conclusory allegations unsupported by specifics . . . For claims of ineffective assistance of counsel under Strickland, the allegations must necessarily show how Hutchinson was prejudiced and that there is a reasonable probability he would have prevailed had counsel done what he now claims should have been done. We conclude that Mr. Hutchinson failed to allege the prejudice necessary under Strickland in other than conclusory, nonspecific fashion and that his ineffectiveness claims must therefore be denied.

44. The same is true in the present case. Maxwell has pointed to nothing on the record to show that he would have acknowledged guilt and accepted a plea offer, if one had been forthcoming. He has been consistent throughout post-conviction proceedings in asserting his innocence and in

16

arguing that counsel should have been more vigorous in researching and presenting an alibi defense. Where "[t]he record is completely barren of any evidence that [the petitioner] would have acknowledged his guilt prior to trial," and he makes no assertion that he would have pled guilty if his counsel had properly advised him, he has not met his burden of showing prejudice under Strickland, and an evidentiary hearing is not warranted. Engelen, at 241.

45. A petitioner who goes to trial, rather than pleading, faces a very high hurdle in meeting his burden of showing prejudice. For one thing, he has not waived his constitutional rights to confrontation and a jury trial, as he would have if he had entered a plea; instead, he has actively asserted those rights. The hurdle is even higher when, as in this case, there is no evidence on the record that the State even offered a plea deal to Maxwell:

> [Defendant's] counsel sat at the plea bargain table alone; the government offered no deal. Hence, in her attorney's considered judgment she had nothing to lose – and possibly something to gain – by proceeding to trial . . . We underscore our hesitancy to impose the badge of deficiency on an attorney's measured judgment to go to trial rather than pleading guilty. To hold otherwise would put attorneys on notice that their zealous pursuit of an acquittal when the government offers no concessions might result in a successful claim that he or she performed deficiently. The facts of this case compel no such warning.

Faubion, at 229, 230.

46. In the present case, whether the State offered no plea deal or whether, as the attorney asserts in his affidavit, Maxwell told him he would accept no deal other than dismissal, Maxwell failed to meet his burden of showing prejudice. No evidentiary hearing is necessary, and Maxwell's claim for relief on this ground will be denied.

17

**Recommended Disposition**

That Maxwell's petition be denied and this action be dismissed with prejudice.

_____
Lorenzo F. Garcia
United States Magistrate Judge